IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID WAYNE HOUCK                     *
                                      *
v.                                    *
                                      *   Civil Action No. WMN-11-816
WARDEN JOHN WOLFE et al.              *
                                      *
                                      *

    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

DAVID WAYNE HOUCK                     *
                                      *
v.                                    *
                                      *   Civil Action No. WMN-11-817
WARDEN JOHN WOLFE et al.              *
                                      *
                                      *

    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

**MEMORANDUM**

Now before the Court are two petitions for habeas corpus relief filed by inmate David Wayne Houck.  Civil Action No. WMN-11-816 arises out of Petitioner's 2006 conviction in the Circuit Court for Wicomico County for second degree assault (the Assault Case).  Civil Action No. WMN-11-817 arises out of Petitioner's 2006 conviction in that same court for forgery and uttering a false document (the Check-Cashing Case).  Respondents filed answers to both petitions but Petitioner has not replied to those answers and the time for doing so has long expired.  Upon review of the petitions, answers, and materials submitted with the answers, the Court finds no need for an evidentiary hearing.

See Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts.  For the reasons that follow, the petitions will be denied and dismissed with prejudice.

## I. Procedural Histories

### A. Civil Action No. WMN-11-816

In the Assault Case, Petitioner and his co-defendant, Kenneth Keesee, were charged with conspiracy to commit armed robbery, armed robbery, first degree assault, second degree assault, conspiracy to commit theft, theft, and several weapons offenses.  A jury trial was held on March 9, 2006, where the following facts were adduced, as summarized by the Maryland Court of Special Appeals.

> This matter arises out of an early morning incident, involving appellant, Kenneth Keesee, and assault victim Michael Raith.  Raith had met Keesee and appellant through a mutual friend, Suzette Steele. During the period from July 3 through July 19, Raith and his new companions "were constantly together pretty much, partying and using cocaine the whole time."
>
> There arose an apparent conflict between appellant and Raith.  Raith recalled that on either July 17 or 18, 2005, Keesee told him that appellant planned to kill him and suggested that he avoid appellant "at all costs."  Between 2:30 and 4:00 a.m. on the morning of July 19, 2005, Raith was awakened by the sound of a vehicle pulling into his driveway.  Edward Nelson was at the wheel, and appellant sat in the passenger's seat.  The two came to the door of a utility room at the back of the house.  The outside utility room door had been locked, but Raith had given them a key to that outside door.  They knocked on an interior door, which separated the utility room from the kitchen, and Raith let them in.

Appellant and Nelson "stepped around" Raith, and what Raith described as an "uncomfortable silence" followed.  A few minutes later a third man, Kenneth Keesee, burst into the house.  Keesee grabbed Raith by the throat and began to choke him.  Appellant stood close to Raith, holding a small knife, poised in a "striking position."  Nelson appeared to be holding a baseball bat or an axe handle.  Keesee asked Raith, "What did you say?  What did you say?"  Raith managed only to reply, "I don't know! I don't know!" before he lost consciousness.  He recalled that he was struck in the right temple.

Raith awoke for a brief period and discovered that he was lying on the floor of the utility room in his home.  Nelson and appellant were hovering over him.  Nelson suggested to appellant that they should kill Raith, fearing that he would go to the police. Raith pleaded for his life, insisting that he would not report them.  He then passed out again, only to be awakened by Nelson and appellant, who reiterated their threats if Raith went to the authorities.  Raith again passed out and was awakened later when Nelson called to relate that he had tried to use Raith's ATM card without success.  At about 7:45 a.m., Raith received a call from his boss, who asked why he was not at work. After Raith related the morning's events, his employer came to the house and encouraged Raith to call the police.

Edward Nelson entered a plea to second-degree assault and testified against Keesee and appellant. Pursuant to the plea bargain, Nelson was to "receive no more than 18 months in the detention center." Nelson's testimony was similar to Raith's.  He recounted that Keesee "snatched [Raith] up, [hollered at him,] shook him around a little bit and dropped him on the floor."  Raith remained on the floor while appellant and Keesee left the room.  Appellant ordered Nelson to watch Raith and to hit him if he tried to get up.  When Raith attempted to stand, Nelson hit him with the bat or axe handle.

Cynthia Keesee testified for the defense, claiming that she was at appellant's house on the morning between 2:30 and 3:30 a.m.

<u>Houck v. State</u>, No. 0433 (Md. Ct. Spec. App. June 5, 2008), at 1-3.

The trial judge, Judge Donald Davis, submitted all of the charges against both defendants to the jury but the jury acquitted both men of all offenses except the second degree assault charges.  Taking into account Petitioner's extensive criminal record, his several prior convictions for assaultive behavior and his prime role in the offence, Judge Davis sentenced Petitioner to a ten year prison term.  Petitioner appealed his conviction and sentence, raising the following grounds:

> 1. Did the trial court commit plain error by failing to give an alibi jury instruction?
>
> 2. Did the trial court commit plain error by allowing the introduction of "other crimes" evidence?
>
> 3. Did the trial court rely on an improper sentencing consideration?

<u>See</u> <u>id.</u> at 2.  The Court of Special Appeals affirmed Petitioner's conviction and sentence.  <u>Id.</u>

Petitioner then initiated post-conviction proceedings in the Circuit Court for Wicomico County.  In those proceedings, Petitioner, who was represented by counsel, asserted that his trial counsel was ineffective based upon the following alleged acts and omissions: (1) failing to conduct a proper investigation, (2) failing to competently argue a motion for

4

severance, (3) failing to make a motion in limine to preclude evidence of his drug use, (4) failing to make proper objections, (5) failing to make competent opening and closing arguments, (6) failing to cross-examine witnesses properly, (7) failing to call necessary defense witnesses, (8) failing to provide a voluntary intoxication instruction, (9) failing to make a proper motion for judgment of acquittal, and (10) failing to request necessary jury instructions.  See Exs. 11-14.  After a hearing at which Petitioner's trial counsel testified, Judge W. Newton Jackson found that Petitioner failed to establish any basis for relief. State v. Houck, Case No. K-05-0826 (Wicomico Co. Apr. 8, 2009).

Petitioner appealed that decision, raising all the same grounds for his ineffective assistance claim save for his claim that counsel failed to competently argue a motion for severance and failed to call necessary defense witnesses.  Petitioner also added an argument that while each of these errors, standing alone, might not bring grounds for relief, the cumulative effect of these errors rendered ineffective the counsel provided to Petitioner.  The Maryland Court of Special Appeals summarily denied that appeal.

In this habeas petition arising out of this second degree assault conviction, Petitioner raises 18 ways in which he believes his counsel was ineffective.  He asserts, without any

factual foundation,[1] that trial counsel was inffective in that he allegedly: (1) failed to competently investigate the facts of the case; (2)incompetently argued the motion for severance of trial from the co-defendant's trial; (3) failed to make a pre-trial in limine motion to prohibit introduction of Petitioner's illegal drug use; (4) failed to object to excessively prejudicial statements made by prosecutor in his opening statement; (5) gave an incompetent and excessively prejudicial opening statement to the jury; (6) failed to object to excessively prejudicial evidence introduced by the prosecution in direct examination of state witnesses; (7) failed to object to excessively prejudicial evidence introduced by co-defendant's counsel during cross-examination of state witnesses; (8) failed to competently cross-examine the alleged victim; (9) failed to competently cross-examine the accomplice called as a state witness pursuant to a plea bargain and agreement for leniency; (10) failed to competently cross-examine the law enforcement officers; (11) failed to object to excessively prejudicial expert witness testimony introduced by codefendant's counsel; (12) failed to call a necessary defense witness; (13) made a

---

[1] Petitioner provides nothing in his petition in support of his ineffective assistance claim beyond listing alleged errors, without explanation or elaboration.  The State, however, has provided the extensive brief prepared by Petitioner's counsel as part of the post-conviction proceedings which supplies the basis for these arguments.  See Ex. 12.

constitutionally defective argument in support of the motion for judgment of acquittal; (14) failed to request that trial court give a "witness promised leniency" instruction; (15) failed to request an "other crimes or acts to prove motive, intent, absence of mistake, identity, or common scheme" instruction; (16) failed to request "presence of defendant" instruction; (17) failed to object to improper remarks of the prosecution during closing argument; and (18) gave an incompetent closing argument.

### B. Civil Action No. WMN-11-817

In the Check-Cashing Case, Petitioner was charged with forgery, uttering a false document, theft, and a scheme to commit theft.  This underlying action involved the same victim, Michael Raith, and some of the same individuals who were involved in the Assault Case.  The events giving rise to the Check-Cashing Case took place about a week before the events giving rise to the Assault Case.

In the jury trial of the Check-Cashing Case, held on May 16, 2006, the following facts were adduced, again as summarized by the Maryland Court of Special Appeals.

> The charges against appellant arise from two bank checks that were written on the account of Michael Raith, and made payable to appellant, David Wayne Houck.  The jury heard testimony that Raith became acquainted with appellant through a mutual friend, Suzette Steele.  Appellant and Raith would see each other nearly every day.  Raith kept checking and savings accounts with the Mercantile Peninsula Bank, in both his name and the name of his wife, from whom

he had been separated for "close to a year."  He kept
the checkbook and spare checks in a desk in a bedroom
of his home.

In July 2005, Raith received $12,000 from the
proceeds of refinancing his home.  Raith deposited the
funds into his checking account at the Mercantile
Peninsula Bank, and told Steele about the transaction.
Raith testified that he withdrew about $500 each day,
to purchase cocaine for use by himself, Steele,
appellant, and another person.  Except for a check in
the amount of $1,700 that he had written to Steele,
for the purchase of cocaine, the money was withdrawn
through ATMs.

In July 2005, Raith's bank notified him that some
checks had been returned for insufficient funds. He
investigated and obtained the cancelled checks from
his bank.  Two of the checks were payable to David
Houck: Check #3705, dated July 14, 2005, for a "truck
repair," and Check #3708, dated July 16, 2005, in
payment for "truck parts."  Houck's driver's license
number and signature were recorded on each check.

Neither check had been written by Raith or
authorized by him, nor did Raith receive the services
that had been indicated on the checks.  The
unauthorized checks "were out of sequence" from the
check numbers in his checkbook.  Raith concluded that
the checks had been taken from his desk.

A third check, #3707, had been written payable to
Rebecca Molnar.  Molnar testified that appellant gave
this check to her and Suzette Steele, telling Molnar
that he "needed somebody with ID."  He asked her
whether she had identification, and requested that she
go to a bank and cash the check.  Molnar endorsed the
check and negotiated it at the Mercantile Peninsula
Bank, and gave $468.24 to Steele.  She testified that
she did not see who had written or signed the check,
although she admitted on cross-examination that she
had told police that appellant had written the check.
Molnar qualified that statement by claiming that she
was under the influence of heroin at the time of the
transaction.  Molnar denied providing any services in
return for this check.  When Molnar asked appellant

whether she would get into trouble for these actions, he assured her that she had no cause for worry.

Sue Sullivan, a teller at the North Salisbury Branch of the Mercantile Peninsula Bank, was working in the drive through station at that branch in July 2005 when Check #3705 was tendered for payment. Although she did not remember the transaction involving Check #3705, Sullivan confirmed that her handwriting had been placed on this check.  Sullivan explained that pursuant to the bank's check cashing protocol, she would compare the customer's face to the photograph on the driver's license.  Sullivan described these procedures and her adherence to them:

Most checks that I cash, if I do not consistently know the folks, I always get ID [,] and the driver's license is consistently written on the back of the check.  And I always put a birth date and an expiration date on that driver's license.

* * *

I write the driver's license number and the birth date and expiration date.  And also when I get a driver's license in there, if I can't see the person, I always say Mr. Such and Such, I'm sorry, <u>I always make sure that I look at their face, too</u>.  [Emphasis added]

* * *

Well, first of all I would have made sure that the driver's license matched the gentleman that I looked at.  Second, I check my computer system to make sure that the money is there.  If I suspect anything is wrong I'll follow other procedures, but this looked fine, there was money there, it was him, it was his driver's license and I cashed the check.

Dionna Dennis also worked at the Mercantile Peninsula Bank in July 2005 at the North Salisbury branch.  She was on duty when Check #3708 was negotiated, but she could not recall this particular transaction.  Dennis essentially repeated an abbreviated version of the same procedure outlined by Sullivan, and conceded on cross-examination that she would sometimes have trouble seeing a customer who used the furthest drive

through lane.  She testified that in the event she
could not see the customer, she would match the
signature on the check with that displayed on the
customer's driver's license.

Testifying as a defense witness, Suzette Steele
said that she dated Raith from October 2004 until
April 2005, when she started a relationship with
appellant which lasted until July 2005.  She claimed
that it was she who wrote and signed the five checks
that had been drawn on Raith's account, including the
two checks that were payable to appellant.  Steele
said that she was well-acquainted with Raith's
handwriting because she had lived with him, had seen
him write checks, and had received notes from him.
Steele explained her actions by claiming that she had
become angry with Raith after a physical altercation,
and wrote the checks to get even with him.  She
claimed that she told appellant that Raith wanted him
to cash the checks so that Raith could buy more drugs.

Houck v. State, No. 0921 (Md. Ct. Spec. App. May 14, 2008), at
2-4.

Based upon this evidence and apparently not accepting

Steele's testimony, the jury found Petitioner guilty of one

count of forgery, two counts of uttering false documents, one

count of theft scheme, and two counts of theft.  After the trial

judge remarked that Petitioner's criminal record was close to

the worst that he had seen, and after Petitioner voiced his

agreement that his trial attorney "did a heck of a job

representing [him]," the trial judge sentenced Petitioner to

twenty years of prison, to be served consecutive to the last to

expire of his outstanding and unserved Maryland sentences.

State's Ex. 3 at 210, 213-214.  Petitioner, represented by
counsel, filed an appeal raising the following issues:

> 1. Whether the evidence was sufficient to sustain the
> convictions for forgery, uttering and theft?
>
> 2. Whether the trial court's imposition of two
> consecutive ten year sentences constituted cruel and
> unusual punishment and whether the trial court
> improperly imposed separate sentences for forgery and
> uttering?

See Houck v. State, No. 0921 at 1.  The Court of Special Appeals
affirmed Petitioner's conviction and sentence.  Id.

Petitioner, represented by counsel, then initiated post-
conviction proceedings in the Circuit Court for Wicomico County.
In addition to arguing that his sentence was unconstitutional,
Petitioner asserted in those proceedings that his trial counsel
was ineffective because he: (1) was inexperienced in forgery and
uttering cases, (2) failed to prepare a defense strategy and
communicate with Petitioner, (3) failed to investigate the case,
(4) failed to make a motion in limine to preclude evidence of
his drug use, (5) failed to make proper objections, (6) failed
to examine witnesses properly, (7) failed to provide a voluntary
intoxication instruction, (8) failed to make proper motion for
judgment of acquittal, (9) failed to request certain other
necessary jury instructions, and (10) failed to make proper
closing arguments.  After a hearing was held on this petition on
February 20, 2009, at which Petitioner's trial counsel

testified, the post-conviction court found that Petitioner failed to establish any basis for relief.  State v. Houck, Case No. K-05-1003 (Wicomico Co. April 7, 2009).  Petitioner filed an application for leave to appeal from the post-conviction proceeding raising similar ineffective assistance of counsel arguments and also arguing that the cumulative effect of counsel's errors denied him effective counsel.  The Maryland Court of Special Appeals summarily denied this application.

In the pending petition arising out of his convictions for forgery, uttering, and theft, Petitioner asserts, again without any factual foundation,[2] that his trial counsel was ineffective in that he: (1) failed to competently investigate the facts of the case, (2) failed to make a pre-trial motion in limine regarding evidence of Petitioner's illegal drug use, (3) failed to object to excessively prejudicial statements of the prosecution in opening statement, (4) did not competently cross-examine the alleged victim, (5) failed to object to excessively prejudicial evidence introduced by the prosecution in redirect examination of the alleged victim, (6) did not competently cross-examine the State's witnesses Sue Sullivan and Dionna Dennis, (7) failed to object to excessively prejudicial

---

[2] Again, Petitioner provides nothing in this petition in support of his ineffective assistance claim but, again, the State has provided the missing argument in the form of the brief prepared by Petitioner's counsel as part of the post-conviction proceedings.  See Ex. 8.

testimony introduced by State's witness Rebecca Molnar, (8) did

not competently cross-examine Rebecca Molnar, (9) failed to

object to excessively prejudicial evidence introduced by

prosecution in redirect examination of Rebecca Molnar, (10) made

constitutionally defective argument in support of motion for

judgment of acquittal, (11) did not competently question defense

witness Suzette Steele on direct examination, (12) opened the

door to allow prosecutor to illicit excessively prejudicial

testimony from Suzette Steele on cross-examination, (13) failed

to provide Petitioner with the defense of voluntary

intoxication, (14) failed to request an instruction on other

crimes or acts to prove motive, intent, absence of mistake,

identity, or common scheme, (15) failed to request a mistake of

fact instruction, (16) failed to request a voluntary

intoxication instruction, (17) failed to object to excessively

prejudicial remarks of prosecution during closing argument, and

(18) gave an incompetent and excessively prejudicial closing

argument.

## II. THRESHHOLD CONSIDERATIONS

The Court finds that Petitioner has adequately exhausted

his state court remedies and that no statute of limitation would

bar Petitioner's claims.

## III. ANALYSIS OF CLAIMS

### A. Standard of Review

An application for writ of habeas corpus may be granted
only for violations of the Constitution or laws of the United
States.  28 U.S.C. § 2254(a).  The federal habeas statute at 28
U.S.C. § 2254 sets forth a "highly deferential standard for
evaluating state-court rulings." Lindh v. Murphy, 521 U.S. 320,
333 n.7 (1997); see also Bell v. Cone, 543 U.S. 447 (2005).  A
federal court may not grant a writ of habeas corpus unless the
state's adjudication on the merits: 1) "resulted in a decision
that was contrary to, or involved an unreasonable application
of, clearly established federal law, as determined by the
Supreme Court of the United States"; or 2) "resulted in a
decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the State court
proceeding."  28 U.S.C. § 2254 (d).  This standard is "difficult
to meet." Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

A state adjudication is contrary to clearly established
federal law under § 2254(d)(1) where the state court 1) "arrives
at a conclusion opposite to that reached by [the Supreme] Court
on a question of law," or 2) "confronts facts that are
materially indistinguishable from a relevant Supreme Court
precedent and arrives at a result opposite to [the Supreme
Court]." Williams v. Taylor, 529 U.S. 362, 405 (2000).
Under the "unreasonable application" analysis under 2254(d)(1),
a "state court's determination that a claim lacks merit

14

precludes federal habeas relief so long as 'fair minded jurists could disagree' on the correctness of the state court's decision." Harrington, 131 S.Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 785 (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 130 S.Ct. 841, 849 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. Id. "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." Renico v. Lett, 130 S. Ct. 1855, 1862 (2010). The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an

15

evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010).  This is especially true where state courts, as happened here, have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." Id. at 379.

**B. Discussion**

To establish a claim of ineffective assistance of trial counsel, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See Strickland v. Washington, 466 U.S. 668, 694 (1984).  With regard to the first prong of this test, this Court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690.  All circumstances are to be considered, and this Court's scrutiny of counsel's conduct must be "highly deferential." Id. at 688-89.  Even if counsel committed a professionally unreasonable error, relief can be granted only if "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." See Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).

After a careful review of the trial transcripts, the transcripts of the post-conviction proceedings and the other filings in this action, this Court finds that in neither case was the conclusion of the post-conviction court unreasonable. Petitioner was unable to establish that the representation provided by his trial counsel fell to a level that would constitute ineffective assistance.

The majority of the alleged errors relate to matters that are matters of trial strategy.  In that regard, Petitioner primarily questions the decision of his counsel in both actions not to seek to exclude evidence concerning Petitioner's use of illegal drugs.  First, this Court questions whether counsel could have been successful in such an effort.  Given the prominent role that cocaine use played in the events giving rise to both actions, it is hard to imagine that the trial court would have kept out any mention of the pervasive drug use of all those involved in these incidents.  The Court also notes that Petitioner's current advocacy for a trial strategy that would suppress evidence of Petitioner's drug use is inconsistent with his argument that counsel erred in both actions in not pursuing a "voluntary intoxication" defense.[3]   Most significantly,

---

[3] As to counsel's failure to raise such a defense, the Court notes that this defense would not have been available in the assault case as the charge on which Petitioner was convicted was

however, the Court finds that because the evidence of drug use painted the victim, who would be the state's main witness, with the same brush it was a valid trial strategy to permit the evidence to come in and, if it was to come in, to preemptively bring it out himself.  See Gilliam v. State, 629 A.2d 685, 692 (Md. 1993) (where counsel's action challenged in habeas petition "might be considered sound trial strategy . . .  courts should not, aided by hindsight, second guess counsel's decisions") (citations omitted).

The difficultly and impropriety of second guessing trial strategy is well illustrated by Petitioner's suggestion that his counsel in the assault case should have objected to certain testimony elicited from Raith by his co-defendant's counsel.  In cross-examination by Keesee's counsel, Raith testified that, on occasion, Petitioner would be the one to inject Raith with cocaine.  While that might make the jury view Petitioner unfavorably, that same testimony seriously undercut Raith's testimony that he feared for his life because Petitioner had threatened him.  This testimony allowed co-defendant's counsel to ask, "Maybe you can clear it up for the jury.  Although you were afraid for your life against Houck, you trusted him with your life to inject you with some substance?" to which Raith

---

a general intent crime for which voluntary intoxication is not a defense.  See State v. Gover, 298 A.2d 378, 381 (Md. 1973).

answered, "I can't explain why I did, but, yes, I did."  Trial
Tr. at 159.  Counsel could more than reasonably conclude that
the benefit of presenting to the jury a glaring inconsistency
highly relevant to an issue central to the crimes actually
charged outweighed any prejudice to Petitioner related to
uncharged drug use.

Similarly, Petitioner's repeated suggestion that his
representation was deficient because trial counsel failed to
make specific objections on other issues is also an
impermissible challenge of trial strategy.  For example,
Petitioner asserts that his counsel in the Check-Cashing Case
should have more strenuously objected to the state's redirect
examination of Molnar.  Counsel did raise an objection that was
overruled by the trial judge.  To elect not to continue to
object and risk aggravating the trial judge or alienating the
jury is reasonable trial strategy.  See State v. Colvin, 548
A.2d 506, 516 (Md. 1988) (observing that counsel "could
understandably expect that the jury would resent objections"
that could be seen as preventing them from knowing basic
information about the case).

As to the claims related to the failure to request specific
jury instructions, the Court has been given little insight into
Petitioner's contentions.  As mentioned, the petitions
themselves provide no argument or evidentiary support for any of

the claims but the Court was able to piece together some of the claims from the materials submitted by the State.  For the failure to request instruction claims, however, the post-conviction briefs provided little explanation as to why not requesting these instructions was error and these claims were barely touched upon in the post-conviction hearing.  To the extent that Petitioner has even sufficiently presented these claims to this Court, the Court finds them without merit.  See Rule 2, Rules Governing Section 2254 Cases in the United States District Courts (requiring petitioners to "specify all the grounds for relief available to the petitioner [and to] state the facts supporting each ground").

Under the deferential standard under which this Court reviews the state proceedings, particularly as they related to ineffective assistance of counsel, the Court concludes that Petitioner has not shown that his trial counsel in either proceeding was constitutionally deficient.  The Court also notes that Petitioner is unable to demonstrate prejudice, particularly in the Assault Case.  Counsel obtained for Petitioner an acquittal on all but one charge, include acquittal on the most serious charges, armed robbery and first degree assault.

**III. CONCLUSION**

For these reasons the Court will dismiss both petitions. Furthermore, the Court will not issue a certificate of

appealability for either petition.  A certificate of
appealability may issue "only if the applicant has made a
substantial showing of the denial of a constitutional right."
28 U.S.C. § 2253(c)(2).  Petitioner "must demonstrate that
reasonable jurists would find the district court's assessment of
the constitutional claims debatable or wrong," Tennard v.
Dretke, 542 U.S. 274, 282 (2004) (citation and internal
quotation marks omitted), or that "the issues presented are
adequate to deserve encouragement to proceed further," Miller-El
v. Cockrell, 537 U.S. 322, 327 (2003).  The Court finds that
Petitioner has not made that substantial showing.


                          _____/s/_____
                          William M. Nickerson
                          Senior United States District Judge


DATED:  February 14, 2012